UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANTHONY FRIESEN,

    Plaintiff,

v.                                          CASE No. 8:20-cv-1168-TGW

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,[1]

    Defendant.
_____

# ORDER

    The plaintiff in this case seeks judicial review of the denial of his claim for Social Security disability benefits.[2] Because the decision of the Commissioner of Social Security is supported by substantial evidence and contains no reversible error, the decision will be affirmed.

## I.

    The plaintiff, who was forty-six years old at the time of the administrative hearing and who has completed school up to the sixth grade, has past

___

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, and should be substituted as the defendant. See Fed.R.Civ.P. 25(d).

[2] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 15).

1

work as a patrol guard, merchant patroller, sweeper/operator, porter, and a vacuum cleaner operator (Tr. 44–45, 46, 82, 105–106, 117, 356). He filed a claim for Social Security disability benefits, alleging that he became disabled due to a neck injury, back injury, herniated discs, rheumatoid arthritis, and gout (Tr. 117–18). The claim was denied initially and upon reconsideration.

The plaintiff, at his request, received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of degenerative disc disease, cervical, thoracic, and lumbar spine, degenerative joint disease/osteoarthritis, olecranon bursitis, patellar tendonitis, bilateral knees, tophaceous gout, and interstitial tear with tendinopathy, left shoulder (Tr. 31). The law judge concluded that, with these impairments, the plaintiff had the following residual functional capacity (Tr. 36):

> to lift or carry 20 pounds; can frequently lift or carry 10 pounds; can sit for a period of six hours; stand for a period of six hours; walk for a period of six hours; and push/pull as much as he can lift/carry. Manipulative limitations would include frequent left overhead and left all other reach. The claimant can frequently bilaterally handle and finger. The claimant can occasionally climb ramps and stairs, and can occasionally climb ladders, ropes, or scaffolds. The claimant can frequently balance, and can occasionally stoop, kneel, crouch, and crawl. The claimant can have frequent exposure to unprotected heights, moving mechanical parts, and vibration; and occasional exposure to extreme cold.

The law judge determined, based on the testimony of a vocational expert, that with those limitations the plaintiff could perform past relevant work as a patrol guard and merchant patroller (Tr. 44–45). Alternatively, the law judge found, based on the vocational expert's testimony, that other jobs existed in significant numbers in the national economy that the plaintiff could perform, such as marker, photocopy machine operator, and router (Tr. 46). Accordingly, the law judge decided that the plaintiff was not disabled (Tr. 47).

The plaintiff sought review of the law judge's decision and submitted additional evidence with that request (see Tr. 2). That evidence consisted of medical records from Robert Norman, M.D., Palm Medical Group of Tampa, a letter from Palm Medical Group of Tampa, and an arthritis residual functional capacity questionnaire (Tr. 2, 8–11, 17–24). The Appeals Council determined that the evidence submitted either would not, with a reasonable probability, change the law judge's decision, or was not related to the period before the date of the decision on September 5, 2019 (Tr. 2).

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3). The Act provides further that a claimant is not disabled if he is capable of performing his previous work. 42 U.S.C. 423(d)(2)(A).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are

4

not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff presents two arguments: First, he contends that "the administrative law judge was in error in her evaluation of the claimant's gouty arthritis condition" (Doc. 25, p. 5). Second, he contends that "the Appeals Council's decision was in error in failing to find that the new evidence submitted to it after the administrative law judge decision was material and would have changed the administrative law judge decision" (id., p. 7). Neither contention is meritorious.

A. Although not clearly stated, the plaintiff appears to contend that the law judge's evaluation of his subjective complaints was inadequate (Doc. 25, p. 5–7). This argument is unavailing.

5

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "require[s] evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge discounts the claimant's testimony concerning subjective complaints, she must articulate explicit and adequate reasons for doing so. Dyer v. Barnhart, supra, 395 F.3d at 1210.

The law judge appropriately applied the pain standard. First, she iterated—in detail—the plaintiff's statements regarding his gout and their limiting effects (Tr. 37):

> At the hearing, the [plaintiff] testified that his gout is very painful and that, because of the gout in his feet, he often cannot wear shoes. Because of his combined impairments, including his gout, the [plaintiff] testified that he could lift approximately five pounds, but could not carry this weight; and was limited in standing long periods because of his knee and foot pain. He testified that he has flares of his gout two to three times per week, during which he lays or reclines on a recliner. Because of the gout in his hands, the [plaintiff] testified that he has problems using his hands, including opening, grabbing, and holding objects, and doing household chores such as laundry or dishes. Because of his combined conditions . . . the [plaintiff]

6

>testified that it is painful for him to move his left upper extremity.

The law judge found that "the [plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision" (id.). The law judge, in her decision, extensively discussed the plaintiff's treatment history of his gout. As noted by the Commissioner, she discussed treatment notes dating back to "2008, seven years before the alleged onset of his disability, through the date of the decision" (Doc. 26, p. 13).

Significantly, the law judge found that due to the plaintiff's impairments, including those resulting from gout, he was capable of "less than the full range of light exertional work" (Tr. 42). Accordingly, the law judge only rejected the plaintiff's allegations that his gout causes debilitating symptoms, such as his testimony that his gout flare ups cause him to not be able to "do anything but just either lay down or recline in a recliner" (Tr. 92). The law judge provided adequate reasons for discounting the plaintiff's statements that the impairments from his gout were disabling.

For instance, the law judge discussed how from 2008–2011, the plaintiff was diagnosed with chronic gouty arthritis and, accordingly,

7

"received treatment for a diagnosis of chronic gouty arthritis, including medication management, diagnostic imaging of his elbows, feet, and ankles with findings consistent with tophaceous gout, and various surgeries for removal of . . . gouty tophi" (Tr. 39). She noted that on October 21, 2015, the plaintiff underwent surgery to remove gout (id., Tr. 536). She additionally noted that plaintiff had been under the care of rheumatologist, Dr. Bernard Germain, for treatment of his gout both before and after the October 21, 2015 surgery (Tr. 39). Over the course of several visits, before and after this surgery date, the plaintiff reported that "he ha[d] not had any attacks of gout but continued to report discomfort in his hands, knees, and feet"[3] (id.).

The law judge noted a September 2015 treatment report of right elbow pain secondary, in part, to tophaceous gout where the plaintiff "reported <u>minimal</u> pain and <u>minimal</u> restrictions in activities of daily living [due to] his right elbow symptoms" (id.) (emphasis in original). She additionally discussed a 2017 consultative examination with Dr. Charles Lebowitz where he reported that the claimant was able to "walk without any assistive device," had a "muscle strength [of] 5/5 in all extremities, and [a] grip strength of 4/5 in both hands" and that the plaintiff "was able to hold a pen, type, open a doorknob, button a shirt, and use a

---

[3]The plaintiff stated to Dr. Bernard Germain that "[h]e ha[d] not had any attacks of gout" during visits on September 17, 2015, December 21, 2015, and March 21, 2016 (Tr. 592–594).

8

zipper without any problems, and digital dexterity was unimpaired"[4] (Tr. 42, 681–87). Notably, this examination conflicts with the plaintiff's testimony in which he stated that he could "sometimes" "button a button [or] zip a zipper" and, additionally, that he has "problems opening up things, grabbing things, holding things" (Tr. 95). The law judge concluded that the evidence in the record did "not document flares of the [plaintiff]'s gout as frequently as alleged by the [plaintiff] in his testimony," which he testified occurred "two to three times a week" (Tr. 42, 92).

The law judge considered the record evidence when she limited the plaintiff to be able to "frequently bilaterally handle and finger" (Tr. 43). See 20 C.F.R. 416.829(c)(2) ("[O]bjective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of symptoms and the effect those symptoms . . . may have on [a plaintiff's] ability to work."). After a thorough review of the plaintiff's treatment history of gout, the law judge concluded (Tr. 42):

> The [plaintiff]'s statements concerning the intensity, persistence and limiting effects of his symptoms are not entirely consistent with the medical evidence and other

---

[4] In his memorandum, the plaintiff appears to challenge the law judge's reliance on Dr. Lebowitz's examination. However, the plaintiff does not provide a clear or concise argument as to why this examination should not be relied upon. Rather, the plaintiff merely states, "[t]he [law judge] gave reasons for discounting the claimant's testimony, but not good reasons. For example [s]he cited the examination of Dr. Lebowitz which was largely benign. [sic] However, due to the nature of gout, it is entirely plausible when not experiencing a gout flare-up, an examination may appear fairly normal" (Doc. 25, p. 7). But the law judge's determination as fact-finder to credit Dr. Lebowitz's report cannot be overcome by plaintiff's view of what is "plausible."

9

> evidence in the record. The record does document a history of gout, for which the [plaintiff] has had recurrent flares and has required several surgeries, though most of the [plaintiff]'s surgeries were prior to the alleged onset date. The record notes that the [plaintiff] had gone back to work and was engaging in work activity as of the alleged onset date before the motor vehicle accident occurred, despite his longstanding history of gout . . . . Although the [plaintiff] testified that he continued to walk with a cane because of his pain, weakness, and instability, the record does not reflect that the [plaintiff] has used a cane outside of during the recovery period following his foot and knee surgeries (internal citations omitted). The [plaintiff]'s early rheumatology records and primary care records do not document flares of the [plaintiff]'s gout as frequently as alleged by the [plaintiff] in his testimony; nor does the evidence reflect manipulative or ambulatory problems as severe as alleged by the [plaintiff].

The plaintiff also argues, in a conclusory manner, that the law judge simply "ignored the nature of gout" in her decision (Doc. 25, p. 7). As part of his argument, the plaintiff attached an article from John Hopkins Arthritis Center discussing gout (id.). However, the plaintiff cannot bolster his argument by information that is not in the record and, thus, this evidence is disregarded. Salmeron-Salmeron v. Spivey, 926 F.3d 1283, 1286 (11th Cir. 2019) (providing that "[i]t is a foundational principle of administrative law that a reviewing court must review only the information that was before the agency at the time of its decision in assessing whether that decision was permissible").

Furthermore, the plaintiff has not pointed to any basis for asserting that the law judge "ignored the nature of gout." The law judge not only found that gout

was a severe impairment but also set forth limitations on the plaintiff's residual functional capacity to accommodate the plaintiff's gout (Tr. 43).

As noted by the Commissioner in her memorandum, "[a]lthough [the] Plaintiff cites to some objective evidence, all of which the [law judge] particularly discussed in her findings, he does not specifically argue how that evidence shows any error by the [law judge]" (Doc. 26, p. 14).

Notably, the plaintiff does not raise a challenge to the law judge's residual functional capacity finding. The Scheduling Order and Memorandum Requirements provides that the plaintiff was required to "identify with particularity the discrete grounds upon which the administrative decision is being challenged" (Doc. 18, p. 2). Thus, because the plaintiff did not specifically articulate a challenge to the residual functional capacity finding, any such challenge is deemed forfeited.[5]

Finally, as the Commissioner argues, the "thrust of [the] Plaintiff's request" is to ask the "[c]ourt to play the role of the [law judge] and reweigh the evidence" (Doc. 26, p. 15). However, it is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, supra 445 F.2d at 656; Mitchell v. Commissioner

---

[5]Any other contention is also forfeited, in accordance with the Scheduling Order and Memorandum Requirements (see Doc. 18, p. 2). See also Sanchez v. Commissioner of Social Security, 507 Fed. Appx. 855, 859, n.1 (11th Cir. 2013) citing Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004) ("A legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

11

of Social Security, 771 F.3d 780, 782 (11th Cir. 2014) (stating that "credibility determinations are the province of the [law judge]" and that the court "will not disturb a clearly articulated credibility finding supported by substantial evidence") (internal citations omitted).

The law judge's explanation of her credibility determination is reasonable and supported by substantial evidence. See Heppell–Libsansky v. Commissioner of Social Security, 170 Fed. Appx. 693, 698–99 (11th Cir. 2006). Consequently, it cannot be overturned.

B. The plaintiff's second contention is that "the Appeals Council's decision was in error in failing to find that the new evidence submitted to it after the administrative law judge decision was material and would have changed the administrative law judge decision" (Doc. 25, p. 7). This argument is not meritorious.

A claimant is permitted to "present new evidence at each stage of the administrative process, including before the Appeals Council." Washington v. Commissioner of Social Security, 791 Fed. Appx. 871, 876 (11th Cir. 2019) (citing Ingram v. Commissioner of Social Security, 496 F.3d 1253, 1261). The Appeals Council "must consider new, material, and chronologically relevant evidence" submitted by the claimant. Id. Evidence is "chronologically relevant" if it relates to the period on or before the date of the law judge's decision. 20 C.F.R. 404.970(a)(5).

12

The evidence submitted by the plaintiff includes medical records from Robert Norman, M.D., Palm Medical Group of Tampa, a letter from Palm Medical Group of Tampa, and an arthritis residual functional capacity questionnaire (Tr. 2, 8–11, 17–24). The date of the law judge's decision was September 5, 2019 (Tr. 2). Some of the evidence submitted from Palm Medical Group of Tampa was dated before the date of the law judge's decision (Tr. 2, 8–11, 17–24). The Appeals Council found that "this evidence does not show a reasonable probability that it would change the outcome of the decision" (Tr. 2). The plaintiff has not challenged that finding (see Doc. 25, p. 8).

Other evidence post-dated the law judge's decision. The Appeals Council found that that evidence "[did] not affect the decision about whether [the plaintiff] was disabled beginning on or before September 5, 2019," and, accordingly, did not relate to the period at issue (Tr. 2).

Significantly, the plaintiff only mentions two items in that evidence: (1) a treatment note from October 1, 2019, indicating that the plaintiff had a gout flare-up, and (2) an arthritis residual functional capacity questionnaire from Dr. Bazargan dated October 31, 2019 (Doc. 25, p. 8). The Appeals Council concluded that the "additional evidence does not relate to the period at issue" and "[t]herefore does not affect the decision about whether you were disabled beginning on or before September 5, 2019" (Tr. 2).

13

The plaintiff simply argues that the "treatment record does not show a worsening of the claimant's condition, but instead, the continuity of the claimant's condition" (Doc. 25, p. 8). The Commissioner persuasively responds, "[e]vidence that plaintiff continued to have gout symptoms and receive treatment for the impairment does not establish any error with respect to the [law judge]'s findings during the relevant period" (Doc. 26, p. 19). Consequently, the Appeals Council could reasonably conclude that the new evidence does not change the law judge's decision.

It is, therefore, upon consideration,

ORDERED:

That the decision of the Commissioner of Social Security is **AFFIRMED**. The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 23rd day of September, 2021.

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE